UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| MICHAEL J. PARISH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 12 C 9981 |
| | ) | |
| MARC HODGE, Warden, | ) | |
| Lawrence Correctional Center, | ) | The Honorable |
| | ) | Ruben Castillo, |
| Respondent. | ) | Judge Presiding. |

## <u>ANSWER</u>

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules") and this Court's January 30, 2013 order, Doc. 13, respondent answers petitioner's petition for a writ of habeas corpus, Doc. 1, as follows:

1.      Petitioner Michael Parish, K84246, is incarcerated at the Lawrence Correctional Center in Sumner, Illinois, where he is in the custody of Marc Hodge, the warden of that facility.

2.      On January 13, 2010, following a jury trial in the Circuit Court of Cook County, Illinois, petitioner was convicted of robbery and sentenced to twenty-five years in prison.  Rule 23 Order, *People v. Parish*, No. 1-10-2010 (Ill. App. Ct. June 22, 2012) (Exhibit A) at 1; Certified Statement of Conviction/Disposition, *People v.*

*Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.) (certified Feb. 7, 2013) (Exhibit B) at 6.

3.     On appeal to the state appellate court, petitioner argued that: (1) trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of theft; (2) the trial court erred in allowing the State to impeach him with his prior attempted aggravated robbery conviction; and (3) his mittimus should be amended to reflect the correct number of days he spent in pre-sentence custody.  Exh. A at 1-2; *see also* Petr. Opening Br., *People v. Parish*, No. 1-10-2101 (Ill. App. Ct.) (Exhibit C); State's Br., *People v. Parish*, No. 1-10-2101 (Ill. App. Ct.) (Exhibit D); Petr. Reply Br., *People v. Parish*, No. 1-10-2101 (Ill. App. Ct.) (Exhibit E).  On June 22, 2012, the state appellate court affirmed petitioner's conviction and corrected the mittimus.  Exh. A at 1-2.

4.     Petitioner's ensuing petition for leave to appeal (PLA) to the state supreme court raised only the ineffective assistance claim he had raised to the appellate court.  PLA, *People v. Parish*, No. 114654 (Ill.) (Exhibit F) at 11-16.  The state supreme court denied the PLA on September 26, 2012.  Order Denying PLA, *People v. Parish*, No. 114654 (Ill. Sept. 26, 2012) (Exhibit G).

5.     On December 14, 2012, this Court received petitioner's pro se § 2254 petition for a writ of habeas corpus, alleging that trial counsel was ineffective for failing to request the lesser-included jury instruction for theft.  Doc. 1 at 5-15.

6.     Petitioner has exhausted his state court remedies for his habeas claim, *see* 28 U.S.C. § 2254(b), for he raised his ineffective assistance claim on direct appeal to both the state appellate court and state supreme court.  Respondent notes that petitioner still has time to file a postconviction petition under 725 ILCS 5/122-1(c) (postconviction petitioner has six months following the due date for his certiorari petition in the United States Supreme Court to file a timely petition).  *See also* Exh. B at 9 (no postconviction petition filed as of February 7, 2013).  Because petitioner has elected to pursue habeas relief, and because the habeas petition contains a single claim for which petitioner's state court remedies are exhausted, respondent answers the claim raised herein.  The petition is timely, and petitioner's claim is not barred by the doctrine of nonretroactivity.

7.     Pursuant to § 2254 Rule 5, the following state court materials are being filed electronically as exhibits to this answer:

|          |                                                                                          |
|----------|------------------------------------------------------------------------------------------|
| Exhibit A: | Rule 23 Order, *People v. Parish*, No. 1-10-2010 (Ill. App. Ct. June 22, 2012); |
| Exhibit B: | Certified Statement of Conviction/Disposition, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.) (certified Feb. 7, 2013); |
| Exhibit C: | Petr. Opening Br., *People v. Parish*, No. 1-10-2101 (Ill. App. Ct.); |
| Exhibit D: | State's Br., *People v. Parish*, No. 1-10-2101 (Ill. App. Ct.); |
| Exhibit E: | Petr. Reply Br., *People v. Parish*, No. 1-10-2101 (Ill. App. Ct.); |
| Exhibit F: | PLA, *People v. Parish*, No. 114654 (Ill.); |
| Exhibit G: | Order Denying PLA, *People v. Parish*, No. 114654 (Ill. Sept. 26, 2012); |

3

Exhibit H:   Common Law Record, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.);

Exhibit I:   Suppl. Common Law Record, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.);

Exhibit J:   Report of Proceedings, Vol. 1 of 3, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.);

Exhibit K:   Report of Proceedings, Vol. 2 of 3, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.);

Exhibit L:   Report of Proceedings, Vol. 3 of 3, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.);

Exhibit M:   Suppl. Exhibits, Vol. 1 of 5, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.);

Exhibit N:   Suppl. Exhibits, Vol. 2 of 5, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.);

Exhibit O:   Suppl. Exhibits, Vol. 3 of 5, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.);

Exhibit P:   Suppl. Exhibits, Vol. 4 of 5, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.); and

Exhibit Q:   Suppl. Exhibits, Vol. 5 of 5, *People v. Parish*, No. 07 CR 2514201 (Cir. Ct. Cook Cnty.).

8.      For the reasons set forth below, petitioner is not entitled to habeas corpus relief, and upon the filing of this answer, along with the attendant exhibits and any supplemental pleadings permitted by the Court, the petition should be denied with prejudice and without an evidentiary hearing, and no certificate of appealability should issue.

4

## ARGUMENT

I.  **This Court Should Deny The Petition Because The State Appellate Court's Rejection Of Petitioner's Ineffective Assistance Claim Was Neither Contrary To, Nor An Unreasonable Application Of, *Strickland v. Washington*.**

A.  **State Court's Factual Findings**

The state court's factual findings are "presumed to be correct" on federal habeas review, and this presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also* 28 U.S.C. § 2254(d)(2); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Mendiola v. Schomig*, 224 F.3d 589, 592-93 (7th Cir. 2000) (state appellate court's factual findings entitled to same deference afforded state trial court's findings). Petitioner fails to provide clear and convincing evidence to rebut this presumption. The following facts are taken from the state appellate court's decision on direct appeal:

> [Petitioner] was arrested on November 11, 2007, in connection with the robbery of Rodney Lipscomb. He was charged with one count each of armed robbery, unlawful use of a weapon by a felon and aggravated restraint. The State nolle prosequied the charges of unlawful use of a weapon by a felon and aggravated unlawful restraint.

> * * *

> At trial, Rodney Lipscomb testified that on November 2, 2007, he cashed in a lottery ticket purportedly worth $500 that he had purchased the previous day. Lipscomb then returned to his housing complex and went to an apartment building to buy $25 worth of cigarettes from an unidentified person. Lipscomb said that [petitioner] was present at the time he purchased the cigarettes. Lipscomb also said that after purchasing the cigarettes, he had a total of $520 on his person. Lipscomb returned to his apartment and as he put his key in the door, he was touched from behind on the shoulder by

5

a man who said, "give it up." The man placed what Lipscomb believed
to be a gun to the back of his head. Lipscomb retrieved the money
from his pocket and gave it to the man. When Lipscomb turned
around, he recognized the man as [petitioner], who then fled the
building and entered the one next door.

On cross-examination, Lipscomb testified that he may have told
investigators that he temporarily pursued [petitioner] as he fled the
building. After [petitioner] fled, Lipscomb "banged" on the door to his
apartment and told his wife to call the police, who, to the best of his
knowledge, did so immediately. Lipscomb acknowledged that he knew
[petitioner] from the neighborhood but denied that either he or his wife
had ever purchased drugs from [petitioner].

Chicago police officer Jason Murdoch testified that nine days
after the robbery, he was assigned to the case and conducted a phone
interview with Lipscomb. Lipscomb told Murdoch that he was robbed
by a person who went by the nickname of "Black Rob." Murdoch said
he was familiar with "Black Rob" and knew his real name to be
Michael Parish. Murdoch compiled a photo array and presented it to
Lipscomb, who identified [petitioner] as the offender. Murdoch then
went to the housing complex in question, where he located and
arrested [petitioner].

Detective David Sipchen testified that on November 12, 2007, he
was present when Lipscomb identified [petitioner] from a lineup as the
offender. Detective Sipchen said that Lipscomb told him that
Lipscomb chased [petitioner] after the robbery.

The State introduced into evidence a letter sent by [petitioner]
to Lipscomb. In the letter, [petitioner] denied holding a gun to
Lipscomb's head or being in possession of one on the day in question.
He also said that the amount of money involved was $370, not $520.
[Petitioner] asked Lipscomb to "tell the truth about what happened."
Forensic analysis confirmed that the DNA profile of the saliva used to
seal the envelope matched that of a sample obtained from [petitioner]'s
cheek.

[Petitioner] testified that he knew Lipscomb from the housing
complex where they both lived. [He] said that he had previously sold
drugs to Lipscomb. [Petitioner] acknowledged that he had been
convicted of drug-related offenses on three previous occasions. [He]
said that he was released from jail for his most recent drug offense on

the date of the robbery. [Petitioner] said that he went to his aunt's house after leaving the jail. There, [petitioner] took various over-the-counter pills and ground them to resemble crack cocaine. He packaged the ground pills into small plastic baggies so that they could be sold. [Petitioner] said he made about 50 such baggies.

[Petitioner] then went to the housing complex and sold 37 of the baggies to Lipscomb for $370. [Petitioner] said that after Lipscomb learned that the substance was not crack cocaine, he returned and demanded that [petitioner] refund his money. When [petitioner] refused, Lipscomb became angry and said "don't worry about it. I got you." Two weeks later, [petitioner] was arrested. [Petitioner] said that upon learning what he was arrested for, he wrote to Lipscomb in an effort to "resolve the whole issue." [Petitioner] denied that he robbed Lipscomb or that he had a gun in his possession on the date in question.

In rebuttal, over defense counsel's objection, the trial court allowed the State to introduce into evidence certified copies of [petitioner]'s five prior felony convictions, including his conviction for attempt (aggravated robbery). The court instructed the jury to consider [petitioner]'s prior convictions only as they may affect his credibility and not as evidence of his guilt. After hearing closing arguments, the jury found defendant guilty of robbery. [Petitioner] was then sentenced to 25 years' imprisonment.

Exh. A at 2-5.

### B.    The State Appellate Court Reasonably Rejected Petitioner's Ineffective Assistance Claim.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a habeas

petitioner who alleges a violation of his federal rights may not re-litigate claims

already addressed by a state court unless the relevant state court decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" based on the record

before the state court at the time of its decision, 28 U.S.C. § 2254(d)(1); *Cullen v.*

*Pinholster*, 131 S. Ct. 1388, 1398 (2011), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Clearing this relitigation bar is meant to be a "difficult" undertaking, for federal habeas relief functions only to "guard against extreme malfunctions in the state criminal justice system," *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), and "not as a means of error correction," *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (internal citations omitted). Indeed, § 2254(d) requires a prisoner to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 785.

In finding that counsel's performance was not deficient, the state appellate court reasonably rejected petitioner's ineffective assistance claim, explaining:

> On appeal, [petitioner] first contends that he received ineffective assistance of trial counsel based on counsel's failure to request the trial court to instruct the jury on the lesser-included offense of theft. [Petitioner] claims that in light of his admission to theft and the jury's acquittal on the charge of armed robbery, trial counsel's failure to request a theft instruction left the jury with no choice but to convict him of robbery. [Petitioner] maintains that had counsel requested a theft instruction, there is a reasonable probability that he would have been convicted of theft rather than robbery because the jury rejected Lipscomb's version of events that [petitioner] was armed with a gun or used force.
>
> In setting forth this argument, [petitioner] asserts that an ineffective assistance claim is reviewed *de novo*. See *People v. Nowicki*, 385 Ill. App. 3d 53, 81 (2008) (citing *People v. Berrier*, 362 Ill. App. 3d 1153, 1166-67 (2006)[)]. This is generally, but not always, true. We

8

note that determining whether defense counsel provided ineffective
assistance may involve a bifurcated standard of review. *People v.
Stanley*, 397 Ill. App. 3d 598, 612 (2009). When a trial court addresses
a claim of ineffectiveness of trial counsel, we review the trial court's
ruling based on the manifest weight of the evidence. *People v. Walker*,
403 Ill. App. 3d 68, 79 (2010); *People v. Taylor*, 237 Ill. 2d 356, 373
(2010). However, where, as here, the trial court does not address the
issue, the standard of review is, as [petitioner] suggests, *de novo*.
*Walker*, 403 Ill. App. 3d at 79.

To prevail on a claim of ineffective assistance of counsel, a
defendant must prove both that his counsel's representation fell below
an objective standard of reasonableness under prevailing professional
norms and that he was prejudiced by the deficient performance.
*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To show
prejudice, the defendant must establish a reasonable probability that,
but for counsel's unprofessional errors, the result of the proceeding
would have been different. *People v. Rucker*, 346 Ill. App. 3d 873, 885
(2001) (citing *Strickland*, 466 U.S. at 694). If either prong of the
*Strickland* test is not satisfied, a defendant's ineffective assistance
claim fails. *People v. Perry*, 224 Ill. 2d 312, 342 (2007).

We note that counsel's decision of whether to request an
instruction on a lesser-included offense is a matter of trial strategy
that is generally not subject to attack on the grounds of ineffectiveness
of counsel and has no bearing on counsel's competence. See *People v.
Brocksmith*, 162 Ill. 2d 224, 232-33 (1994) (Freeman, J., concurring);
*People v. Evans*, 369 Ill. App. 3d 366, 383 (2006). " 'Matters of trial
strategy are generally immune from claims of ineffective assistance of
counsel.' " *Evans*, 369 Ill. App. 3d at 383 (quoting[ ] *People v. Smith*,
195 Ill. 2d 179, 188 (2000)[)]. This is so because it is virtually
impossible for a reviewing court to assess with any certainty the
potential effect of one trial tactic versus another. As explained by
Justice Freeman in his concurrence in *Brocksmith*, the decision to
tender a lesser-included offense instruction is a:

> "calculated risk on the part of defense counsel based on
> his or her assessment of the evidence and the perceived
> likelihood the jury will convict the defendant rather than
> acquit altogether. If the instruction is given to the jury
> that would have chosen to acquit on the greater offense,
> then counsel has effectively subjected defendant to the

risk of conviction on an uncharged offense when the client might otherwise have avoided any conviction. Alternatively, if defense counsel fails to request the instruction defendant may be found guilty of the greater offense because the jury, in considering closely balanced evidence, believed it should find defendant guilty of a crime under the circumstances. It is these types of strategic calculations that a court will not second-guess." *Brocksmith*, 162 Ill. 2d at 232-33 (Freeman, J., concurring).

Here, we refuse to second-guess or find unreasonable counsel's decision not to request a theft instruction. Counsel may have not submitted the instruction hoping the jury would accept an "all-or-nothing approach." Counsel may have decided that it was better strategy to not give the jury a third option, theft. See *Evans*, 369 Ill. App. 3d at 384. We cannot say this decision is unreasonable where, as here, without a theft instruction, [petitioner] had the possibility of being acquitted of all charged offenses had the jury acquitted him of robbery. See *People v. McIntosh*, 305 Ill. App. 3d 462, 471 (1999). Conversely, as pointed out by Justice Freeman, had counsel requested a theft instruction, counsel would have subjected [petitioner] to the risk of conviction on an uncharged offense when [petitioner] might otherwise have avoided any conviction. *Brocksmith*, 162 Ill. 2d at 232-33 (Freeman, J., concurring). In that case, we can easily imagine that [petitioner] would then be before us arguing ineffectiveness based on counsel's decision to request the instruction because, given the jury's verdict, he would have been acquitted were it not for counsel's request. It is worth noting that even in that case we would not find counsel's decision unreasonable because we will not second-guess "the exercise of judgment, discretion, trial tactics or strategy even where appellate counsel or the reviewing court might have handled the matter differently." *People v. Schmidt*, 168 Ill. App. 3d 873, 882 (1988). As a result, we do not find counsel ineffective on the basis of his failure to request a theft instruction.

Exh. A at 5-8.

The state appellate court's decision was reasonable. To show ineffective

assistance, a petitioner must demonstrate that (1) counsel's performance fell below

an objective standard of reasonableness; and (2) but for counsel's alleged errors or

omissions, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "'Judicial scrutiny of counsel's performance must be highly deferential' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Strickland*, 466 U.S. at 689). Indeed, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation and citation omitted).

But "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691 (citation omitted). A petitioner must "affirmatively prove prejudice" by "show[ing] that [particular errors] actually had an adverse effect on the defense." *Id.* at 693. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* Rather, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Knowles*, 556 U.S. at 123 (citation omitted); *see Richter*, 131 S. Ct. at

788. "[O]nly a clear error in applying *Strickland* will support a writ of habeas

corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009); *see also Richter*, 131

S. Ct. at 788.

Here, because the state appellate court cited and accurately set forth the

standard in *Strickland*, its decision was not contrary to Supreme Court precedent.

*See Early v. Packer*, 537 U.S. 3, 8 (2002). Nor did the state court unreasonably

apply *Strickland*. It is well-established that "[t]he decision of whether to request an

instruction on a lesser-included offense is a matter of trial strategy . . . accorded

'enormous deference.'" *United States ex rel. Walls v. DeTella*, No. 94 C 6749, 1997

WL 534287, at *7 (N.D. Ill. Aug. 19, 1997) (citing *United States v. Windsor*, 981

F.2d 943, 947 (7th Cir. 1992), and quoting *United States v. Hirschberg*, 988 F.2d

1509, 1513 (7th Cir. 1993)).

In this case, counsel's decision to give the jury only three options — armed

robbery, robbery, or acquittal — was reasonable trial strategy. In Illinois, "[t]he

distinguishing element among armed robbery, robbery, and theft is whether force or

the threat of force, or a dangerous weapon is employed." *People v. Washington*, 873

N.E.2d 540, 546 (Ill. App. Ct. 2007) (citing *People v. Jones*, 595 N.E.2d 1071, 1075

(Ill. 1992)). In other words, "theft is a simple deprivation of property; robbery is a

deprivation of property, plus force or the threat of force; and armed robbery is the

deprivation of property, plus force or the threat of force, plus the use of a dangerous

weapon." *Washington*, 873 N.E.2d at 546 (citing 720 ILCS 5/16-1(a)(1), 720 ILCS 5/18-1(a), and 720 ILCS 5/18-2(a)).

Here, had the jury embraced petitioner's story that he never used or threatened force on Lipscomb, it could not have convicted petitioner of robbery and would have been required to acquit. But had the jury received the additional theft instruction, given petitioner's testimony confessing to deceiving Lipscomb and depriving him of his money, it would have been required to convict petitioner of that lesser-included offense, *see* 720 ILCS 5/16-1(a) (2007), instead of acquitting him altogether. Thus, as the state appellate court correctly noted, Exh. A at 7-8, had counsel requested the theft instruction, petitioner would have faced a conviction on an uncharged offense, thereby removing any chance of acquittal.

Furthermore, counsel's legitimate trial strategy was to demonstrate that Lipscomb's testimony was false and that no robbery, armed or otherwise, occurred. That counsel's vigorous cross-examination of Lipscomb successfully discredited a crucial part of Lipscomb's testimony — and ultimately resulted in an acquittal on the armed robbery charge — shows that the chances of acquittal on robbery also were substantial. Therefore, because the decision to forego a theft instruction was consistent with the evidence and increased petitioner's chances of acquittal, it was reasonable. *See United States ex rel. Sumner v. Washington*, 840 F. Supp. 562, 572-73 (N.D. Ill. 1993); *cf. Atkins v. Zenk*, 667 F.3d 939, 945 (7th Cir. 2012); *Druery v. Thaler*, 647 F.3d 535, 540 (5th Cir. 2011).

13

*Beck v. Alabama*, 447 U.S. 625 (1980), wherein the Supreme Court held that due process requires that a defendant facing the death penalty receive a lesser-included instruction for a noncapital offense, does not alter this result. As the Seventh Circuit has noted, "*Beck* was a capital case, and in a footnote the Court said, 'We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case.'" *Calloway v. Montgomery*, 513 F.3d 940, 944 (7th Cir. 2008) (quoting *Beck*, 447 U.S. at 638 n.14). Indeed, *Beck* makes "clear that the risk of a wrongful conviction for a capital crime informed [its] result. The risk 'cannot be tolerated in a case in which the defendant's life is at stake'" because "death is a different kind of punishment." *Calloway*, 513 F.3d at 944 (quoting *Beck*, 447 U.S. at 637).

But because petitioner was not facing the death penalty, *Beck* does not apply. In this context, counsel's decision to forego a theft instruction was reasonable trial strategy, for it maximized petitioner's chances of an acquittal. At the very least, the state appellate court's same conclusion was within the bounds of permissible differences of opinion. *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010). Accordingly, the state appellate court's finding of no *Strickland* deficiency was neither contrary to, nor an unreasonable application of, *Strickland*.

Petitioner cannot show prejudice, in any event.[1]  Lipscomb testified that petitioner robbed him.  Petitioner testified that he "swindled" Lipscomb.  But petitioner wrote a letter to Lipscomb attempting to influence his testimony; among other things, the letter asked Lipscomb to "let [petitioner's investigator] know that [Lipscomb] picked the wrong person out."  Exh. P at 8.  The jury's verdict shows that it did not wholly adopt petitioner's testimony; otherwise, it would have acquitted petitioner altogether.  Rather, the verdict suggests that, based on Lipscomb's testimony and petitioner's letter to Lipscomb, the jury determined that petitioner used or threatened some force, albeit not a gun, to take money from Lipscomb.  Moreover, the prosecution impeached petitioner with his numerous prior convictions.  Given this evidence, there is no reasonable probability that a theft instruction would have changed the result of the trial: petitioner's letter and impeachment with his prior convictions combined with Lipscomb's testimony doomed any chance that petitioner would have been convicted of theft instead of robbery.  For these reasons, petitioner cannot show *Strickland* prejudice.

In sum, the state appellate court's rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of, *Strickland.*

---

[1] Notwithstanding *Woolley v. Rednour*, 702 F.3d 411, 421-22 (7th Cir. 2012), respondent preserves the argument that AEDPA deference applies to both *Strickland* prongs, even though the state appellate court denied the *Strickland* claim only on performance grounds.

## II.    No Certificate Of Appealability Is Warranted.

Upon entering an order denying habeas relief, this Court should also deny certification for petitioner's claim. *See* § 2254 Rule 11(a) ("The district court must issue or deny a certificate of appealability (CA) when it enters a final order adverse to the applicant."); *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 n.5 (2012). To obtain a CA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court should not certify petitioner's claim for appeal because reasonable jurists would not find it debatable that it is meritless under § 2254(d).

## CONCLUSION

This Court should deny petitioner's petition for a writ of habeas corpus without an evidentiary hearing and deny a certificate of appealability.

March 27, 2013                                   Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

By:    s/ Gopi Kashyap
GOPI KASHYAP, Bar # 6289886
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
TELEPHONE: (312) 814-4684
FAX: (312) 814-2253
EMAIL: gkashyap@atg.state.il.us

## CERTIFICATE OF SERVICE

I certify that on March 27, 2013, I electronically filed the foregoing **Answer** with the Clerk of the United States District Court for the Central District of Illinois, Peoria Division, using the CM/ECF system and on the same date mailed a copy of this document via the United States Postal Service to the following non-CM/ECF user:

Michael Parish, K84246
Lawrence Correctional Center
10930 Lawrence Road
Sumner, Illinois 62466

s/ Gopi Kashyap
GOPI KASHYAP, Bar # 6289886
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
TELEPHONE: (312) 814-4684
FAX: (312) 814-2253
EMAIL: gkashyap@atg.state.il.us