UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. MICHAEL J. PARISH,<br><br>Petitioner,<br><br>v.<br><br>MARC HODGE, Warden,<br>Lawrence Correctional Center,<br><br>Respondent. | No. 12 C 09981<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Michael Parish is serving a twenty-five year sentence for robbery. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 1.) Presently before the Court is Parish's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (R. 1, Pet.) For the reasons stated below, Parish's petition for writ of habeas corpus is denied.

## BACKGROUND[1]

Parish was arrested on November 11, 2007, for the alleged robbery of Rodney Lipscomb. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 2.) The State's Attorney's Office charged Parish with one count each of armed robbery, unlawful use of a weapon by a felon, and aggravated unlawful

---

[1] In reviewing a petition for habeas corpus relief pursuant to Section 2254, a court must presume that the state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1). This presumption can be overcome when the petitioner rebuts those facts by clear and convincing evidence. *Id.* Parish has not presented clear and convincing evidence challenging the statement of facts in the last state court decision to address his arguments on the merits. The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Parish*, No. 1-10-2101 (Ill. App. Ct. 1st Dist. June 22, 2012), (R. 15-1, Ex. A, Ill. App. Ct. Op.), and supplemented where appropriate by the appellate record submitted to the Court pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. *See Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010).

restraint. (*Id.*; R. 15-2, Ex. H, Pet'r's Indictment at 21-24.) Prior to the commencement of trial, the State dropped the unlawful use of a weapon by a felon and aggravated unlawful restraint charges. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 2; R. 15-4, Ex. K, Trial Tr. at 2:22-24, 4:1-5.) Judge Diane Cannon presided over Parish's jury trial, which began on January 12, 2010 in the Circuit Court of Cook County. (R. 15-4, Ex. K, Trial Tr. at AA-1.)

At trial, witness testimony varied as to the sequence of events that gave rise to Parish's arrest for armed robbery. Lipscomb testified that on November 2, 2007, after cashing in a lottery ticket worth $500.00, he returned to his housing complex to buy $25.00 worth of cigarettes from an unidentified person. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 3.) Lipscomb said that Parish was present when he purchased the cigarettes. (*Id.*) After purchasing the cigarettes, Lipscomb had $520.00 on his person. (*Id.*) Lipscomb testified that upon returning to his apartment, as he put his key in the door, a man touched him from behind on his shoulder and said "give it up." (*Id.*) Lipscomb felt what he believed to be a gun on the back of his head. (*Id.*) Lipscomb retrieved the $520.00 from his pocket and gave it to the man. (*Id.*) When he turned around, he recognized the man as Parish. (*Id.*) Lipscomb testified that Parish then fled the building and ran into the building next door. (*Id.*) After Parish fled, Lipscomb told his wife to call the police. (*Id.*)

Chicago Police Officer Jason Murdoch testified that after being assigned to Lipscomb's case, he conducted a phone interview with Lipscomb, during which Lipscomb told Murdoch that he was robbed by a man with the nickname of "Black Rob." (*Id.* at 4.) Murdoch knew that "Black Rob" was actually Parish. (*Id.*) Murdoch compiled a photo array for Lipscomb, who identified Parish as the offender. (*Id.*) Murdoch testified that after Lipscomb identified Parish, Murdoch went to the housing complex to arrest Parish. (*Id.*) Detective David Sipchen testified

that on November 12, 2007, he was present when Lipscomb identified Parish as the offender from a lineup. (*Id.*)

Parish's attorney, Kenneth Klaxman, told the jury in his opening statement that Lipscomb fabricated a story about a robbery to exact revenge upon Parish for selling him counterfeit drugs. (R. 15-4, Ex. K, Trial Tr. at 89:1-90:6.) Klaxman stated, "[t]his isn't about a robbery, it isn't about an armed robbery, it's about a drug deal." (*Id.* at 90:6-7.)

Parish's testimony supported Klaxman's theory of the case. Parish testified that he knew Lipscomb from the housing complex where they both lived and that he had previously sold Lipscomb drugs. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 4.) Parish said that he had been convicted of drug-related offenses three times and that he was released from jail for his most recent offense on the date of the alleged robbery. (*Id.*) Parish testified that after being released from jail, he ground various over-the-counter pills to resemble crack cocaine, and packaged the pills into 50 small plastic baggies in order to sell them. (*Id.* at 4-5.) Parish said that he wanted to "swindle some money . . . out of drug dealers[.]" (R. 15-5, Ex. L, Trial Tr. at 61:7-8.) Parish testified that he sold 37 of the baggies to Lipscomb for $370.00. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 5.) Parish said that after Lipscomb discovered that the substance was not crack cocaine, Lipscomb demanded that Parish refund his money. (*Id.*) Parish testified that when he refused to refund the money, Lipscomb became angry and said "don't worry about it[,] I got you." (*Id.*) Two weeks later, police arrested Parish. (*Id.*) Parish denied robbing Lipscomb or possessing a gun on the date of the robbery. (*Id.*) On cross-examination, Lipscomb acknowledged that he knew Parish from the apartment complex, but he denied that Parish had ever sold him drugs. (*Id.* at 3.)

The State submitted into evidence a letter Parish sent to Lipscomb, in which he stated that he neither held a gun to Lipscomb's head nor possessed a gun on the day of the robbery. (*Id.* at

3

4.) Parish also stated in the letter that the amount of money he had received from Lipscomb was $370.00, not $520.00. (*Id.*) In the letter, Parish requested that Lipscomb "tell the truth about what happened." (*Id.*) Parish testified that he wrote to Lipscomb in order to "resolve the whole issue." (*Id.* at 5.)

In Klaxman's closing arguments, he reiterated his theory of the case: that Lipscomb fabricated his story about the robbery to retaliate against Parish for selling him fake drugs. (R. 15-5, Ex. L, Trial Tr. at 104:18-106:14, 107:16-112:10.) The jury received instructions from the trial court on the offense of armed robbery and the lesser-included offense of robbery. (*Id.* at BB137- BB142.) On January 13, 2012, the jury returned a verdict of guilty for the offense of robbery. (*Id.* at 152:21-24.) Parish received a sentence of twenty-five years of imprisonment. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 5.)

Parish appealed his conviction and sentence through new appellate counsel. (*Id.* at 1.) On appeal, Parish raised the following arguments: (1) he received ineffective assistance of trial counsel based on trial counsel's failure to request that the trial court instruct the jury on the lesser-included offense of theft[2]; (2) the trial court erred in denying trial counsel's motion *in limine* to bar the State from introducing into evidence for impeachment purposes Parish's prior conviction for attempted aggravated battery; and (3) his mittimus should be amended to reflect

---

[2] According to Illinois law, theft occurs when a person knowingly exerts unauthorized control over property of the owner or obtains control of the property by deception. 720 Ill. Comp. Stat. 5/16-1(a)(1)-(2)(2006). A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force. 720 Ill. Comp. Stat. 5/18-1(a)(1999). An armed robbery occurs when a person commits robbery and uses a dangerous weapon to commit the crime. 720 Ill. Comp. Stat. 5/18-2(a) (2000)). Illinois law has established that theft can be a lesser-included offense of armed robbery where the conduct and the mental state required for theft are alleged in the armed robbery indictment. *People v. Jones*, 595 N.E.2d 1071, 1074 (Ill. 1992). Here, the elements of theft are included in the indictment for armed robbery, (*see* R. 15-2, Ex. H, Pet'r's Indictment at 21), and the Illinois Appellate Court assumed, without explicitly holding, that theft was a lesser-included offense in this case, (*see* R. 15-1, Ex. A, Ill. App. Ct. Op. at 5).

4

the 939 days he spent in pre-sentence custody. (*Id.* at 5, 8, 10.) The Illinois Appellate Court ordered the Clerk of the Cook County Circuit Court to amend Parish's mittimus to credit him for the 939 days spent in pre-sentence custody and affirmed the judgment of the trial court in all other respects. (*Id.* at 11.) Regarding Parish's ineffective assistance of counsel claim, the court found that Klaxman's decision not to request a theft instruction was a matter of trial strategy and refused to "second-guess" his tactical decision. (*Id.* at 7-8.)

Parish filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court, arguing that his trial counsel's failure to request a jury instruction on the lesser-included offense of theft constitutes ineffective assistance of counsel because the defense's theory of the case was premised on Parish's admission of guilt to theft. (R. 15-1, Ex. F, Parish's PLA at 97-115.) The Illinois Supreme Court denied Parish's PLA without comment on September 26, 2012. (R. 15-2, Ex. G, PLA Denial Order at 1.)

## PROCEDURAL HISTORY

Parish filed his *pro se* petition for federal habeas corpus relief on December 14, 2012. (R. 1, Pet.) In his petition, Parish claims that trial counsel's failure to request a jury instruction for the offense of theft constituted ineffective assistance of counsel. (*Id.* at 9-15.) On March 27, 2013, Respondent answered Parish's petition and asserted that the petition should be denied with prejudice and without an evidentiary hearing because the ineffective assistance of counsel claim fails on the merits. (R. 14, Answer.) On May 21, 2013, Parish filed a reply and memorandum in support of his petition, arguing that the Illinois Appellate Court unreasonably applied United States Supreme Court precedent in rejecting his ineffective assistance of counsel claim. (R. 19, Pet'r's Reply; R. 20, Pet'r's Mem.)

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief may be granted only when a state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The statutory phrase 'clearly established Federal law as determined by the Supreme Court of the United States,' is a critical limitation under [Section] 2254(d)(1) and refers to . . . 'the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000) (quoting 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' federal law when the state court applied a rule that 'contradicts the governing law' set forth by the Supreme Court or if the state court reached a different outcome based on facts 'materially indistinguishable' from those previously before the Supreme Court." *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010) (quoting *Williams*, 529 U.S. at 405-06). "A state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Williams*, 529 U.S. at 407).

To succeed on a claim predicated on Section 2254(d)'s "unreasonable application" clause, a petitioner must show that the state court's application of federal law was both incorrect and unreasonable. *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008) (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)). A state court's application of federal law is unreasonable only if it is "so erroneous as to be objectively unreasonable" and "well outside the

boundaries of permissible differences of opinion.'" *Bennett v. Gaetz*, 592 F.3d 786, 790 (7th Cir. 2010) (quoting *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009)). Put simply, "a state court's decision 'minimally consistent with the facts and circumstances of the case' is not unreasonable [.]'" *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)).

Under post-AEDPA habeas law, federal courts generally defer greatly to the decisions of state courts, and review those decisions for reasonableness only. *See Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008) (citing *Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006)). This deference, however, "does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). In addition, the Court must construe a *pro se* petition liberally. *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004).

## ANALYSIS

Before considering the merits of a habeas petition, a federal habeas court must ensure that the petitioner has exhausted all available remedies in the state courts before considering the merits of his petition. 28 U.S.C. § 2254(b)(1)(A); *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009). "This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Gonzales*, 565 F.3d at 380 (quoting *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007)). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, exhaustion of a claim requires that the petitioner directly appeal to the Illinois Appellate Court

and present the claim in a PLA to the Illinois Supreme Court. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007).

Upon review of the state court record, it is clear that Parish brought his ineffective assistance of counsel claim before the Illinois Appellate Court and in his PLA to the Illinois Supreme Court, thereby satisfying the exhaustion requirement. Respondent acknowledges that Parish properly exhausted his state court remedies, that the Illinois Appellate Court adjudicated his claim on the merits, and that 28 U.S.C. § 2254(d) applies to his petition. (R. 14, Answer at 3; *See* R. 15-1, Ex. A., Ill. App. Ct. Op. at 8, 11). Accordingly, the Court proceeds to consider the merits of Parish's ineffective assistance of counsel claim.

I. **Whether the Illinois Appellate Court erred in denying Parish's ineffective assistance of counsel claim**

Parish argues that the state court erred when it denied his claim that his trial counsel was ineffective for failing to request that the trial court offer a jury instruction on the lesser-included offense of theft. (R. 1, Pet. at 9-15.) He asserts several bases by which the Illinois Appellate Court erred. The Court addresses each one in turn.

A. **Counsel's failure to tender a lesser-included offense instruction**

Parish's principal argument is that his attorney's failure to tender an instruction on the lesser-included offense of theft constitutes ineffective assistance of counsel, because if such an instruction had been given, the jury most likely would have convicted him of theft rather than robbery. (R. 1, Pet. at 12-14.) Parish argues that the Illinois Appellate Court's denial of his claim is an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). (R. 20, Pet'r's Mem. at 10.) Respondent argues that the Illinois Appellate Court's conclusions were neither contrary to, nor an unreasonable application of, Supreme Court precedent, and thus Parish is not entitled to relief on his claim. (R. 14, Answer at 5.)

8

The standard for evaluating an ineffective assistance claim is set forth in *Strickland*. A habeas petitioner must show that: (1) his attorney's performance was deficient; and (2) he was prejudiced by the attorney's deficient performance. *Id.* at 687. To satisfy the first prong, the petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. *Strickland* instructs that in making this determination a court should maintain a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To satisfy the second prong, the petitioner must demonstrate that there is a reasonable probability the result of the proceeding would have been different but for counsel's errors. *Id.* at 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. A court may address the two *Strickland* prongs in "whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

Here, the Illinois Appellate Court identified *Strickland* as the standard applicable to Parish's ineffective assistance of counsel claim. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 6). Parish concedes that the court's decision was not contrary to Supreme Court precedent and argues only that the decision was an unreasonable application of *Strickland*. (R. 20, Pet'r's Mem. at 10); *see also Garth v. David*, 470 F.3d 702, 710 (7th Cir. 2006) (a "decision applying the correct legal rule to the facts of a case is not 'contrary to' within the meaning of § 2254(d)(1)").

When a habeas petitioner advances an ineffective assistance of counsel claim that a state court has already decided on the merits, he is faced with "doubly deferential judicial review" based upon the deference required by *Strickland* and Section 2254(d). *Knowles v. Mirzayance*,

556 U.S. 111, 123 (2009). "The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Relief should be denied as long as the state court "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (quoting *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000)).

In its decision, the Illinois Appellate Court held that trial counsel's decision not to request a theft instruction was reasonable. (R. 15-1, Ex. A, Ill. App. Ct. Op. at 7-8.) The court noted that "whether to request an instruction on a lesser-included offense is a matter of trial strategy that is generally not subject to attack on the grounds of ineffective assistance of counsel and has no bearing on counsel's competence." (*Id.* at 6-7); *see also Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) (finding that "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation"). The court, quoting *People v. Brocksmith*, 642 N.E.2d 1230, 1234 (Ill. 1994), found that the decision to tender a lesser-included offense is a "calculated risk on the part of the defense counsel based on his or her assessment of the evidence and the perceived likelihood the jury will convict the defendant rather than acquit altogether." (*Id.* at 7.) The court reasoned that without a theft instruction, Parish had the possibility of being acquitted of all charges, whereas with the theft instruction, Parish would be subjected to the risk of conviction of theft when the jury would otherwise have acquitted him completely. (*Id.* at 8.) Thus, the court held that counsel's decision not to tender the theft instruction was part of a reasonable trial strategy and did not constitute ineffective assistance of counsel. (*Id.*) The court did not address the prejudice prong of *Strickland*.

This Court does not find the Illinois Appellate Court's decision unreasonable. The *Strickland* Court instructs courts that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In *Adams v. Bertrand*, 453 F.3d 428 (7th Cir. 2006), the Seventh Circuit confronted materially similar facts to this case and found that defense counsel had not provided ineffective assistance of counsel. The Illinois Appellate Court's analysis here is nearly identical to the Seventh Circuit's analysis in *Adams*, where the court reasoned that while tendering a lesser-included offense may have some appeal in hindsight, it would also increase the chance of conviction on some charge, whereas refusing to instruct on the lesser-included offense could have led to complete acquittal. *Id.* at 435. The Seventh Circuit found that counsel's actions pertained to trial tactics, and counsel had not committed a *Strickland* error. *Id* at 436. Therefore, the Illinois Appellate Court complied with *Strickland*'s admonition against second-guessing an attorney's decision when it determined that Parish's counsel's decision not to tender a theft instruction was consistent with his reasonable, although ultimately unsuccessful, trial strategy. *See Strickland*, 466 U.S. at 689. The Court concludes that the Illinois Appellate Court's decision was not an unreasonable application of *Strickland*.

### B. Parish's secondary arguments in support of his ineffective assistance of counsel claim

Parish puts forth several additional arguments to support his ineffective assistance of counsel claim. First, Parish argues that the Illinois Appellate Court's decision was unreasonable because it ignored Illinois precedent. (R. 20, Pet'r's Mem. at 19.) Parish cites *People v. Gallagher*, 980 N.E.2d 140, 147 (Ill. App. Ct. 1st Dist. 2012), for the proposition that "where defense counsel argues a theory of defense but then fails to offer an instruction on that theory of

11

defense, the failure cannot be called trial strategy and is evidence of ineffective assistance of counsel." (*Id.*) Under Section 2254(d)(1), the Court is to review the state court's application of *federal* law, not *state* law. Errors of state law are beyond the scope of federal habeas review where "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21(1975) (per curiam)); *see also Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). Therefore, any errors Illinois Appellate Court may have made in its application of state law are beyond the scope of this Court's review.

Parish also relies on *United States ex rel. Barnard v. Lane*, 819 F.2d 798 (7th Cir. 1987), to support his contention that his counsel's failure to tender a theft instruction constitutes ineffective assistance of counsel. (R. 20, Pet'r's Mem. at 14-15.) In *Barnard*, the defendant, who was charged with murder, testified that he shot the victim and sought a jury instruction on justification to account for his self-defense theory. 819 F.2d at 802-03. Under Illinois law, if there is any evidence of self-defense, even evidence injected by the defendant himself, the court must give a manslaughter instruction. *Id.* at 803. Defendant's trial counsel's strategy was to present the jury only with the options of finding the defendant guilty or not guilty of murder. *Id.* Defense counsel apparently believed that if the jury had only these two options, it would be likely to acquit defendant, but that if it were given the choice of finding him guilty of manslaughter, it would be less likely to acquit him. *Id.* The Seventh Circuit found that defense counsel was ineffective because his actions left defendant with "no defense at all" and that the jury had "no alternative but to find [the defendant] guilty." *Id.* at 803-04. The court held that

"[t]he spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense in the hope that a jury's sympathy will cause them to misapply or ignore the law they have sworn to follow." *Id.* at 805.

In sharp contrast to the situation in *Barnard*, Parish had a defense to the armed robbery charge—innocence—that his counsel made available for the jury to choose in the jury instructions through the choice of acquittal. Parish seeks to recast his admission of "swindling" Lipscomb as an admission of theft and argues that theft is his only form of defense in this case. (R. 20, Pet'r's Mem. at 14.) In both his opening and closing statements, however, Parish's counsel made clear that the theory of defense in this case was that no armed robbery took place and that Lipscomb fabricated the entire story in retaliation for having been sold counterfeit drugs. (*See* R. 15-4, Ex. K, Trial Tr. at 89:1-90:6; R. 15-5, Ex. L, Trial Tr. at 104:18-106:14, 107:16-112:10.) Under this set of facts, introducing a theft instruction would have simply increased the likelihood that Parish would face conviction on an uncharged offense. Therefore, the Court finds the *Barnard* holding inapplicable in this case.

Finally, Parish argues that the Illinois Appellate Court's decision violated the Supreme Court's holding in *Beck v. Alabama*, 447 U.S. 625 (1980). (R. 19, Pet'r's Reply at 6-7.) Respondent argues that *Beck* is inapplicable here because this is a noncapital case. (R. 14, Answer at 14.) In *Beck*, the Supreme Court held that in capital cases, the failure to tender jury instructions on lesser-included noncapital offenses, where the evidence warrants such a charge, violates the Eighth Amendment and the Due Process Clause. 447 U.S. at 627. The Court expressly declined to rule on whether the Due Process Clause requires such instructions in noncapital cases. *Id.* at 638 n.14. The Seventh Circuit has concluded that the Supreme Court had not extended *Beck* to noncapital cases and was unlikely to do so. *Robertson v. Hanks*, 140

F.3d 707, 710 (7th Cir. 1998). The court reasoned that extending *Beck* would "enmesh the federal judiciary in almost every detail of state criminal procedure and every trial ruling, and [courts] would regularly have to review failures to instruct on lesser included offenses under state law . . . ." *Id.* (quoting *Nichols v. Gagnon*, 710 F.2d 1267, 1272 (7th Cir. 1983)).

The Court notes that the jury received an instruction on robbery, which is, in fact, a lesser-included offense of armed robbery. The Seventh Circuit has made clear, however, that *Beck* does not apply to noncapital cases, and thus Parish may not rely on it to support his ineffective assistance of counsel claim.

Each argument Parish has set forth to demonstrate that the Illinois Appellate Court's decision was unreasonable has failed. Parish has fallen short of rebutting the "strong presumption" that his counsel's behavior was reasonable. *See Strickland*, 466 U.S. at 689. The Court finds that the Illinois Appellate Court's determination under *Strickland* is at least "minimally consistent with the facts and circumstances of the case." *Conner*, 375 F.3d at 649. Viewing the court's decision through the "doubly deferential" lens of *Strickland* and the AEDPA, and because the decision is not "well outside the boundaries of permissible differences of opinion," *Bennett*, 592 F.3d at 790, the Court finds that the Illinois Appellate Court's decision was not an unreasonable application of *Strickland*. Thus, Parish's petition is denied.[3]

---

[3] In the interests of completeness, the Court notes that neither party has requested an evidentiary hearing, and none is required. The AEDPA also generally bars federal courts from holding evidentiary hearings to supplement the record. 28 U.S.C. § 2254(e)(2). "A federal evidentiary hearing is required if a habeas petitioner alleges facts which, if proved, would entitle him to relief and the state courts-for reasons beyond the control of the petitioner-never considered the claim in a full and fair hearing." *Spreitzer v. Schomig*, 219 F.3d 639, 648 (7th Cir. 2000) (quoting *Porter v. Gramley*, 112 F.3d 1308, 1317 (7th Cir. 1997)). In this case, Parish does not allege either that the record is insufficient to dispose of his claims without an evidentiary hearing or that the state court hearing did not constitute a full and fair hearing. Thus, the Court finds that no hearing is necessary to fairly resolve Parish's claims.

## II. Whether the Court should issue a Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. *See Miller-El*, 537 U.S. at 335. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Parish must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted). Where a district court has rejected the petitioner's claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

Parish has not made a substantial showing of the denial of his constitutional rights. The Court's earlier denial of Parish's ineffective assistance of counsel claim rests on well-settled precedent governing the Sixth Amendment right to counsel and does not present difficult or close questions. Thus, the Court concludes that reasonable jurists could not find room to debate its ruling. Accordingly, the Court declines to issue Parish a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Parish's petition (R. 1) is DENIED. The Clerk of the Court is directed to enter a final judgment against Parish. Additionally, the Court will not issue a certificate of appealability from this judgment for the reasons stated herein.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: September 2, 2014